IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED

JUL 24 2008

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By _____
Deputy Clerk

RICKY LEON DORITY, §
 Movant-Defendant, §
         § Cause No. CIV 08-279-FHS
v. §
         § Crim. No. CR-99-009-S
UNITED STATES OF AMERICA, §
 Respondent-Plaintiff. §

MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255(f)(3)

TO THE HONORABLE JUDGE OF SAID COURT:

Ricky Leon Dority, Movant Pro Se in the above styled and numbered cause of action files this Memorandum in Support of Movant's §2255(f)(3) Motion as follows:

JURISDICTION

Jurisdiction is invoked concerning post-conviction sentencing matters; 28 U.S.C. §2255. Movant asserts a **preexisting** constitutional right which necessarily applies retroactively from the Supreme Court's decision; 28 U.S.C. §2255(f)(3).

PRELIMINARY STATEMENT

The duty of the United States Government to afford protection to its citizens is limited always by the power it possesses for that purpose. The Federal Government can neither grant nor secure to its citizens rights or privileges which are not expressly or by implication placed under its jurisdiction. All that cannot be so granted or secured are left to the **exclusive** protection of the **States**.

The right of the people to keep and bear arms, with the obligation on the part of the United States to afford it protection, existed long before the adoption of the Constitution. The Second Amendment to the Constitution, prohibiting **Congress** from "infringing" on the **[individual] right** of the people to keep and bear arms, was

-1-

not intended to limit the action of the State governments in respect to their own citizens, but rather to operate upon [restrict] the National Government alone. The Second Amendment left the authority of the several States unimpaired, added nothing to the already existing powers of the United States, and **guaranteed the continuance** of the right **only against Congressional interference**. The people, for their protection in the enjoyment of the right to keep and bear arms, must therefore look to the States, where the power for that purpose was originally placed.

The right of the people to assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with the powers or duties of the National Government, is an attribute of national citizenship, and as such, under the protection of, and guaranteed by, the United States Government. The very idea of a government republican in form implies that right, and an invasion of it presents a case within the sovereignty of the United States.

The right to keep and bear arms is **not granted** by the Constitution; neither is it in any manner dependent upon the Constitution, or any amendment, for its existence. The Second Amendment means no more than that the [individual] right of the people to keep and bear arms, **shall not be infringed by Congress**, and has no other effect than to **restrict the powers of the National Government**. Sovereignty, for the protection of the right of the people to keep and bear arms within the respective States, rests alone with the States, not the National Government.

This fundamental human right originates with the common law and **preexisted** the Constitution and the 1789 ratification of the Second Amendment. The right **preexisted** passage of 18 U.S.C. §§ 921 et seq. (921-928) and the right **preexisted** Movant's prosecution under §922(g)(1) for the consitituionally protected conduct.

Movant's judgment, pursuant to 18 U.S.C. §922(g)(1), must be vacated and set aside because the said act, in so far as it creates offenses and imposes penalties, is in violation of the Constitution of the United States, and constitutes an infringement of the rights of the several States and of the people, which includes Movant. At the

very minimum, the individual right to keep and bear arms applies **prospectively** from ratification of the Second Amendment in 1789.

On June 26, 2008, the U.S. Supreme Court conclusively interpreted the Second Amendment as having **always** meant an **individual's** right to keep and bear arms; <u>D.C. v. Heller</u>, (07-290)(6/26/08). Movant was convicted under 18 U.S.C. §922(g)(1) for possessing a firearm, conduct which is, **and was**, protected by the Second Amendment. Pre-<u>Heller</u>, courts upheld federal gun laws as being a proper exercise of congress' power under the commerce clause, applying a "rational basis" test. <u>Heller</u> explained rational basis does not apply to the **individual** right under the Second Amendment.

Accordingly, any precedent decided on rational basis simply does not apply.

## STATEMENT OF THE CASE

On January 14, 1999, Movant was charged in a one-count indictment with violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); felon in possession of a firearm which had been shipped or transported in interstate commerce. Movant entered a plea of not guilty and on April 5, 1999, a jury trial was commenced. On April 6, 1999, the jury returned its verdict finding Movant guilty of count one. On September 22, 1999, Movant was sentenced to a term of 235 months imprisonment and five years supervised release; <u>U.S. v. Dority</u>, CR-99-009-S (E.D.Ok.1999).

Movant appealed and on May 24, 2000, in an unpublished opinion, the appeals court affirmed; <u>U.S. V. Dority</u>, 215 F.3d 1337 (10th Cir 2000). Movant filed a §2255 motion in the district court; <u>U.S. v. Dority</u>, 01-cv-468-S, which was denied on December 27, 2001. Movant sought a C.O.A. from the district court; <u>U.S. v. Dority</u>, CIV-01-468-S (E.D.Ok. Mar.15,2002), and in the Tenth Circuit; <u>U.S. v. Dority</u>, 02-7023 (10th Cir Jul.3,2002) which was denied also.

Movant filed a petition for writ of certiorari; <u>Dority v. U.S.</u>, 02-7830, but the Supreme Court denied review on January 13, 2003. Movant filed a second or successive application to the district court; <u>U.S. v. Dority</u>, CIV-05-261-S, which was

denied, and to the court of appeals; Dority v. U.S., 05-7075 (10th Cir Jan.17,2006), which was denied also. Movant filed a petition for writ of certiorari; Dority v. U.S., 05-11261, which was denied review on October 2, 2006. Movant now timely files this habeas action under 28 U.S.C. §2255(f)(3).

## STATEMENT OF FACTS

Movant did not waive any constitutional rights in any prior proceedings, but rather went to jury trial. There is no plea agreement or waiver.

The Second Amendment guarantees "the [individual] right of the people [Movant] to keep and bear Arms, shall not be infringed [by Congress].

Congress did infringe on the right to keep and bear arms in passing 18 U.S.C. §§ 921 et seq, a power reserved by the people for the States.

Movant's mere possession of a firearm that had (once upon a time) affected interstate commerce in a minimul manner, did not constitute a substantial effect on interstate commerce, hence was an improper exercise of commerce clause power.

The right of the people to keep and bear arms comes not from the adoption of the Constitution, but rather preexisted the formation of the United States.

## GROUND ONE: SECOND AMENDMENT VIOLATION

> THE RIGHT "TO KEEP AND BEAR ARMS" IS AN **INDIVIDUAL** RIGHT THAT "SHALL NOT BE **INFRINGED**" (2nd Amdt). CONVICTION UNDER §922(g)(1) DID **INFRINGE** ON MOVANT'S PRE-EXISTING RIGHT TO KEEP AND BEAR ARMS. §922(g) EXCEEDS CONGRESS' AUTHORITY UNDER THE COMMERCE CLAUSE BECAUSE MERE POSSESSION OF A FIREARM DOES NOT **SUBSTANTIALLY** AFFECT INTERSTATE COMMERCE.

As a preliminary matter, Movant's standing to raise this claim depends on: (1) whether the Heller decision renders 18 U.S.C. §§ 921 et seq., or alternatively §922(g)(1) facially invalid or unconstitutional as applied (making Movant's conduct lawful); **or** (2) whether the decision must be applied retroactively (excepted from

the waiver). It is the province of this Court to apply the law and make the threshold determination of Movant's standing to raise the issue.

The Court reviews Applicant's pro se pleadings under a liberal standard. Jones v. Crowley, 28 F.3d 1067 1069 (10th Cir 1994). If the Court can "reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so." Barnett v. Hargett, 174 F.3d 1128 1133 (10th Cir 1999). The Court may construe a pro se motion so that it conforms to the appropriate procedural rule. U.S. v. Rourke, 984 F.2d 1063 1067 (10th Cir 1992).

Retroactivity analysis is inapposite because Heller created no procedural rule, but merely interpreted what the Second Amendment has always meant since 1789 when it was ratified. In Bousley v. U.S., 523 U.S. 614 (1998), the Supreme Court explained that "Teague, by its own terms, applies only to **procedural rules**, we think it is inapplicable to a situation in which this Court decides the meaning of a criminal statute enacted by Congress." Id. at 620. Teague retroactivity analysis is likewise inapplicable to Movant's situation where the Court decided the meaning of an amendment enacted by Congress.

Movant is entitled to bring this challenge because: (1) Movant is actually innocent where the constitutionally protected conduct does not, and did not constitute a crime because the statute of conviction is in conflict with the Second Amendment, and (2) the Supreme Court's Heller decision applies either (a) prospectively from the Second Amendment's 1789 ratification, or (b) retroactively from the date of the Heller decision, which is an authoritative constitutional interpretation of a **preexisting** fundamental constitutional right, and is not a procedural rule.

In construing the Second Amendment, the Court looks first to the text of the amendment: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In Heller, the Court reasoned "In interpreting this text, we are guided by the

principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.' U.S. v. Sprague, 282 US 716 731 (1931); See also Gibbons v. Ogden, 9 Wheat 1, 188 (1824). Normal meaning may of course include an idiomatic meaning, but it excludes secret or technical meanings that would not have been known to ordinary citizens in the founding generation.

The Constitution of the United States went into effect March 3, 1789. Owings v. Speed, 5 Wheat 420, 5 L Ed 24 (1820). The first ten amendments to the U.S. Constitution, which comprise the Bill of Rights set out in 1 Stat. 97, were proposed to the Legislatures of the several States by the First Congress, on September 25, 1789. The moment an amendment to the Federal Constitution is ratified, it becomes effective as law. Druggan v. Anderson, 70 L Ed 151 (1925).

In D.C. v. Heller, supra, the Supreme Court affirmed the decision of the United States Court of Appeals for the District of Columbia in Parker v. D.C., 478 F.3d 370 (D.C.Cir. 2007). Both Courts discussed and analyzed the "prefatory clause" which is the first clause (A well regulated Militia, being necessary to the security of a free State), and the "operative clause" which is the second clause (the right of the people to keep and bear Arms, shall not be infringed).

"The wording of the operative clause also indicates that the right to keep and bear arms was not created by the government, but rather preserved by it. Hence the Amendment acknowledges '**the** right ... to keep and bear Arms,' a right that pre-existed the Constitution like '**the** freedom of speech.' Because the right to arms existed prior to the formation of the new government, the Second Amendment only guarantees that the right 'shall not be infringed.' To determine what interests this pre-existing right protected, we look to the lawful, private purposes for which people of the time owned and used arms. The correspondence and political dialogue of the founding era indicate that arms were kept for lawful use in self-defense and hunting." Parker v. D.C., 478 F.3d at 382-383 (internal citations omitted).

"The preexisting right to keep and bear arms was premised on the commonplace assumption that individuals would use them for these private purposes, in addition to whatever militia service they would be obligated to perform for the state. The premise that private arms would be used for self-defense accords with Blackstone's observation, which had influenced thinking in the American colonies, that the people's right to arms was auxiliary to the natural right of self-preservation. The right of self-preservation, in turn, was understood as the right to defend oneself against attacks by lawless individuals, or if absolutely necessary, to resist and throw off a tyrannical government" Id. (internal citations and quotations omitted).

The firearm in this case was possessed for the Second Amendment protected purposes of self-defense and self-preservation. The right to keep and bear the firearm for the protected purposes of self-defense and self-preservation preexisted the founding of the United States; creation of the Federal Constitution; ratification of the Bill of Rights; Congressional enactment of 18 U.S.C. §§ 921 et seq; Movant's prosecution under §922(g)(1); and entry of the judgment, which is void. This **preexisting individual** right is not subject to "rational basis" analysis or other judicial scrutiny; Heller, Slip Op @ 56.

18 U.S.C. §922(g)(1) provides "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; to ... possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The statue represents a total ban on firearms possession by convicted felons. The statute provides "It **shall be unlawful** to possess a firearm while the Second Amendment contemporaneously provides the individual right to keep and bear arms **shall not be infringed**. The Amendment and the statute are unequivocally in conflict and the statute must yield to the Federal Constitution.

18 U.S.C. §922(g)(1) makes the constitutionally protected conduct unlawful for Movant to keep and bear arms, and is therefore unconstitutional. Conviction and

sentence under 18 U.S.C. §922(g) **infringes upon** Movant's pre-existing right to keep and bear Arms. The Constitution must prevail where incompatibility with a statute is clear. Powell v. Pennsylvania, 32 L Ed 253 (1888). A statute which violates the Federal Constitution is void regardless of the purpose of its recitals. Brimmer v. Rebman, 37 L Ed 862 (1891). As such, §922(g)(1) violates the Second Amendment by infringing on the individual right of the people to keep and bear arms, and is void.

What cannot be done directly because of constitutional restrictions cannot be accomplished indirectly by legislation which accomplishes the same result. Fairbank v. U.S., 45 L Ed 862 (1901). Movant's individual right to keep and bear arms cannot be infringed directly because of Second Amendment restrictions and therefore cannot be accomplished indirectly by §922(g) which accomplishes the same result.

The Federal Constitution is the supreme law of the land, ordained and established by the people, and all legislation [including §922(g)] must conform to the principles it lays down. U.S. v. Butler, 80 L Ed 477 (1936). The Second Amendment, "established by the people," guarantees that "the right of the people to keep and bear Arms, will not be infringed." §922(g)(1) does not conform to the principles of the Second Amendment: §922(g)(1) is unconstitutional on its face.

Under the plain and clear language of the Second Amendment, there is no clause excepting felons. The Amendment clearly protects the right of **all** the people to keep and bear arms **shall not** be **infringed**. The founders did not limit this right to except those previously convicted of crimes, but rather clearly intended to preserve the pre-existing right for **all** the people. 18 U.S.C. §922(g)(1) infringes on this individual right in all instances with regard to convicted felons. Any attempt by the Federal Government or Congress to limit, narrow or restrict this guaranteed individual right, unlawfully **infringes** on the **individual** right and the law is void.

"The right to bear arms has always been the distinctive privilege [sic] of freemen. Aside from any necessity of self-protection to the person, it represents among all nations power coupled with the exercise of a certain jurisdiction ... [i]t

was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed." Heller v. D.C., slip op at 47 (quoting J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891)). The Supreme Court stated in U.S. v. Cruikshank, 92 US 542 (1876), that the right "is not a right granted by the Constitution [or] in any manner dependent upon that instrument for its existence. The Second Amendment ... means no more than it **shall not be infringed by Congress**." Id. at 553. See also Heller v. D.C., slip op at 19 and 47. Hence, states may limit or restrict the people's individual right to keep and bear arms, but Congress may not. Congress did infringe on the right to keep and bear arms when it enacted 18 U.S.C. §922(g)(1), which is void.

The federal government may act only pursuant to a power granted to it by the United States Constitution. McCulloch v. Maryland, 17 US 316 405, 4 Wheat, (1819). Among the powers enumerated under Article I is the power to regulate commerce. Pre-Heller, the test for the validity of the congressional exercise of Commerce Clause powers was stated in Hodel v. Indiana, 452 US 314 325 (1981) ("A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is **no rational basis** for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends"). Federal gun laws were held to be constitutional under a "rational-basis" judicial scrutiny.

The Heller Court explained that "this [gun] law, like almost all laws, would pass rational-basis scrutiny. But rational basis scrutiny is a mode of analysis we have used when evaluating laws under constitutional commands that are themselves prohibition on irrational laws." Slip op at 56, n.27. "In those cases, 'rational basis' is not just the standard of scrutiny, but the very substance of the constitutional guarantee. Obviously, the same test could not be used to evaluate the extent to which a legislature may regulate a specific enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or

the right to keep and bear arms. If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." Id. Rational basis scrutiny therefore does not apply.

Justice Scalia, writing for the Court in Heller, explained why judicial scrutiny does not apply: "We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest balancing" approach. The very enumeration of the right takes it out of the hands of the government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is **really worth** insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad. We would not apply an 'interest balancing' approach to the prohibition of a peaceful neo-Nazi march through Skokie. The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of stated secrets, but not for the expression of extremely unpopular and wrong-headed view. The Second Amendment is no different. Like the First, it is the very **product** of an interest-balancing by the people." Id. slip op at 62-63 (internal citations omitted).

The Supreme Court's declaration in Heller that the right of the people to keep and bear arms has <u>always</u> been an **individual** right has far reaching effects on the constitutionality of §922(g)(1). Courts had previously held and reasoned that, since the Second Amendment does not grant individual rights, a court cannot rely on it as a basis for requiring Congress to make specific findings regarding the effects on interstate commerce of enacting legislation touching on firearms. See e.g. U.S. v. Stewart, 451 F.3d 1071 1075 (9th Cir 2006). However, since we now know that the Second Amendment does grant individual rights, the Court must rely on it as a basis

for requiring Congress to make specific findings regarding the effects on interstate commerce of enacting legislation touching on firearms under §922(g)(1). Because Congress did not make specific findings establishing the nexus and effects on interstate commerce, congressional enactment of §922(g)(1) lacks requisite findings to establish firearms **substantially** affect interstate commerce.

Congress, under the Federal Constitution's commerce clause, Article I, § 8, clause 3, may regulate three broad areas of activity: (1) the use of the channels of interstate commerce, (2) the protection of the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities, and (3) those activities that **substantially** affect interstate commerce; where economic activity **substantially** affects interstate commerce, congressional legislation regulating that activity will be sustained. See U.S. v. Lopez, 131 L Ed 2d 626 637-38 (1995).

Under the federal system, the **states** possess primary authority for defining and enforcing the criminal law; when Congress criminalizes conduct already denounced as criminal by the states, if effects a change in the sensitive relation between federal and state criminal jurisdiction. Id. The importation of congressional findings regarding the regulation of firearms through previous enactments is especially inappropriate to justify the validity - under the Federal Constitution's commerce clause. Id. at 640.

Article I, § 8, clause 3, gives Congress the power: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Until Heller, virtually all courts relied on the misconception that the right was a collective **state** militia right, hence Congress could properly regulate the right "among the several States" under the commerce clause. Based on this erroneous belief, Congress enacted 18 U.S.C. §922 without making requisite specific findings regarding how the **mere possession** of a firearm **substantially** affected interstate commerce. A nexus is required because the right is an individual, not a state right.

History of presently relevant federal firearms control legislation may be traced back to the National Firearms Act of 1934, 48 Stat. 1236-1240, originally codified as 26 U.S.C. §1132, now codified, as amended, as chapter 53 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 5801-5872; and the Federal Firearms Act of 1938, 52 Stat. 1250, originally codified as former 15 U.S.C. §901-910, now repealed, the provisions of which, as amended and supplemented, have been carried forward to chapter 44 of Title 18 U.S.C. §§921 et seq.

In October 1968, Congress enacted the Gun Control Act of 1968, P.L. 90-618, 90th Congress, 2d Session, 82 Stat.1213. Title I of this legislation reenacted all of chapter 44 of Title 18 (§§ 921-928), but with what are for present purposes essentially only minor changes from the version thereof enacted earlier that year by Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90-351, 90th Congress, 2d Session, 82 Stat. 197. Congress made numerous specific findings regarding how firearms manufactures, dealers and importers affected interstate commerce; P.L. 90-351, § 901(a)(3), but no specific findings were made regarding an individual's mere possession of ordinary firearms.

When enacting the Firearms Owners' Protection Act of 1986, P.L. 99-308, § 1(b), 100 Stat. 449, Congress expressly found, inter alia, "that (1) the rights of citizens--(A) to keep and bear arms under the Second Amendment to the United States Constitution ...; and (D) against unconstitutional exercise of authority under the ninth and tenth amendments; require additional legislation to correct existing firearms statutes and enforcement policies."

Now that the right to keep and bear arms is known to be an individual right under <u>Heller</u>, the fact that an individual's possession of a firearm has a casual nexus to interstate commerce is insufficient to lend validity to §922(g)(1). Any federal law enacted under commerce clause authority that infringes on the individual right to keep and bear arms is an improper and unlawful application of the clause. Alternatively, it must be shown that Movant's mere possession of the firearm had a

**substantial** affect on interstate commerce. Congress made no such specific findings when enacting §922(g)(1), rendering the legislation unconstitutional.

If the founders had any intent to federally regulate an individual's right to keep and bear arms, it was supplanted when the Second Amendment was ratified. The Federal Constitution which included the commerce clause, Art.I, §8, cl.3, was ratified in 1787; the Bill of Rights which included the Second Amendment was ratified in 1789. If an irreconcilable conflict exists between constitutional sections, the section passed last in time prevails. The amendment must prevail because it is the latest expression of the will of the people. In such a case, there is no room for application of the rule as to harmonizing inconsistent provisions.

As a matter of law, §922(g)(1) derives from an improper exercise of Commerce Clause power; Movant's mere possession of a firearm did not **substantially** affect interstate commerce; any precedent resting on rational basis scrutiny may no longer be applied; the statute's constitutionality must be reviewed anew in light of Heller. §922(g)(1) infringes on Movant's individual Second Amendment right to keep and bear arms. Movant's conviction under the unconstitutional statute is void and Movant is actually innocent of the offense charged, which is not a crime. "An unconstitutional statute is not a law; in confers no rights; it imposes no duties; it affords no protection; it carries no office; it is in legal contemplation as inoperative as though it had never been passed." U.S. v. Coin and Currency, 28 L Ed 2d 434 450 n.4 (1970) (citing Norton v. Shelby County, 30 L Ed 178 (1886)). As such, §922(g)(1) is inoperative as if it was never passed.

Movant requests the Court review the pleadings, files and record and make a determination as to whether an evidentiary hearing is warranted; Rules Governing Section 2255 Proceedings, Rule 8(a). If an evidentiary hearing is warranted, Movant requests the Court appoint an attorney to represent Movant, who qualifies to have counsel appointed under Rule 8(c) and 18 U.S.C. §3006A.

Movant declares under penalty of perjury that the statements and facts herein are true and correct to the best of Movant's personal knowledge and belief pursuant to 28 U.S.C. §1746.

## CONCLUSION / PRAYER

FOR THESE REASONS, Movant Prays the Court GRANT the 28 U.S.C. §2255(f)(3) Motion and HOLD 18 U.S.C. §921 et seq. (§§921-928), or alternatively §922(g)(1), facially invalid or unconstituional as applied. May it be so Ordered.

Executed on the 22 day of July, 2008.

Respectfully,

*[signature]*
Ricky Leon Dority, Pro Se
Federal Inmate No. 03636-063
FCI - Post Office Box 7000
Texarkana, Texas 75505-7000